FILED
2026 Sep-01 AM 07:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **MARY KIRKLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. __________________** |
| | ) | |
| **BLUE ORIGIN WASHINGTON, LLC, and FINTECH CONSULTING, LLC D/B/A APTASK GLOBAL WORKFORCE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COMES NOW, Mary Kirkley, Plaintiff in the above-styled action, files her Complaint against Defendants, Blue Origin Washington, LLC and Defendant Fintech Consulting LLC, d/b/a ApTask Global Workforce, Defendants in the above-styled action, and, in support therefore, shows as follows:

### INTRODUCTION

Plaintiff Mary Kirkley was employed by Fintech Consulting LLC d/b/a ApTask Global Workforce LLC (“ApTask”) in or around May 2025 as a “temporary” contractor for Blue Origin Washington, LLC (“Blue Origin”) working forty (40) hours a week. Plaintiff was hired to be an Integrated Engineer. When she was hired, Plaintiff informed both ApTask and her Blue Origin supervisors that she

had a disability, a severe allergy to silicone, latex and adhesive, for which she carries an epinephrine auto-injector for potential life-threatening reactions.

On July 10, 2025, Plaintiff was assigned a task by Colton Malcom ("Malcom"), supervisor with Blue Origin, involving adhesives, although Blue Origin was aware of her severe allergy. She immediately developed an initial minor reaction after her first exposure to the adhesive and reported the reaction to Environment, Health and Safety ("EHS") and her direct supervisor, Dre (l.n.u). However, Dre sent Ms. Kirkley back to work in the adhesives, which resulted in a life-threatening allergic reaction that required her to go to the Emergency Room.

The following morning, while still in the hospital, she reported what happened to Dre. Plaintiff was called two hours later by ApTask and terminated from her contract with Blue Origin. ApTask and Blue Origin failed to protect Ms. Kirkley, failed to accommodate her disability, placed her in a life-threatening situation and discriminated and retaliated against her by terminating her employment.

## PARTIES

1. Plaintiff, Mary Kirkley, is above the age of nineteen (19) and is a resident of the State of New Jersey. At the time of the incident, she was a resident of Madison, Alabama.

2. Defendant, Blue Origin Washington, LLC (hereinafter "Defendant" or "Blue Origin") is a foreign limited liability company, doing business in Huntsville, Alabama in the State of Alabama.

3. Defendant, Fintech Consulting, LLC d/b/a ApTask ("ApTask") is a foreign limited liability company, doing business in Huntsville, Alabama in the State of Alabama.

## JURISDICTION AND VENUE

4. All of the events, transactions or occurrences which gave rise to Plaintiff's claims took place in this Judicial District. Therefore, venue is proper in this district and this division pursuant to 28 U.S.C. § 1391(b)(1).

5. Federal jurisdiction exists as this action arises under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213, as amended ("ADA").

6. This Court maintains subject matter jurisdiction under 28 U.S.C. § 1343(a)(4).

## CONDITIONS PRECEDENT

7. Plaintiff has exhausted all administrative remedies, as mandated by 42 USCS § 12117, by filing a Charge of Discrimination with the Equal Employment Opportunity Commission against Blue Origin on November 18, 2025, alleging discrimination by Defendant, a copy of which is attached hereto as Exhibit A and its terms incorporated by reference, as if fully set out herein.

8. The Equal Employment Opportunity Commission issued Plaintiff a Right to Sue Letter relating to Blue Origin, dated June 3, 2026, a copy of which is attached hereto as Exhibit B and its terms incorporated by reference, as if fully set out herein.

9. The Equal Employment Opportunity Commission issued Plaintiff a Right to Sue Letter relating to ApTask, dated August 27, 2026, a copy of which is attached hereto as Exhibit C and its terms incorporated by reference, as if fully set out herein.

10. Plaintiff has satisfied all conditions precedent to the filing of the instant Complaint.

## FACTS

11. Plaintiff restates and realleges the allegations contained in paragraphs 1 through 10, as if fully set out herein.

12. Plaintiff is a 41-year-old African American female and a veteran of the United States Army.

13. Plaintiff was hired by ApTask in New Jersey as a contract employee for Blue Origin at its Huntsville, Alabama location on or around May 19, 2025.

14. ApTask and Blue Origin offered Plaintiff a one-year contract.

15. ApTask and Blue Origin are joint employers.

16. Plaintiff moved to Huntsville, Alabama from New Jersey for the sole purpose of working at the Blue Origin facility.

17. Plaintiff is disabled and has a severe allergy to silicone, latex and adhesive and at the time of the incident, was prescribed an epinephrine auto-injector for potential life-threatening reactions.

18. Plaintiff advised ApTask of her severe allergy when she was hired on as a "temporary" employee.

19. Plaintiff personally advised Blue Origin supervisors, Timothy Warren, Andrew (l.n.u), and Nate (l.n.u.), of her severe allergy on her first day with Blue Origin in Huntsville, Alabama.

20. Plaintiff's direct supervisors at Blue Origin who directed her work were Team Leads, Colton Malcom and Nate (l.n.u.). Plaintiff reported to Blue Origin each day and was given assignments, tasks and was directly supervised by Blue Origin employees on a daily basis.

21. Plaintiff's job title was an Integration Engineer, which consists of assembling, testing, tuning and troubleshooting rocket engines, avionics, and structural stages to ensure all subsystems function together safely and correctly before flight.

22. On or around July 10, 2025, Plaintiff was assigned a task to perform a build which involved mating the connector ends together and wrapping components

using ThermaShield adhesive on the back end of the plugs, along with silicone adhesive tape.

23. Plaintiff was not provided any protective gear or personal protective equipment (PPE) for her hands or skin in the event she came in contact with adhesives.

24. Approximately twenty (20) minutes after Plaintiff began her task, she noticed a rash develop and her hands began burning and breaking out. Plaintiff realized this was an allergic reaction to the silicon adhesive tape she was using and immediately left the lab where she was and went to the Environment, Health and Safety Department ("EHS") to report what had happened.

25. Plaintiff was given a topical hydrocortisone cream and Claritin by the nurse on duty, Virginia (l.n.u.), who indicated that Plaintiff could return to work as long as she "avoided silicone, latex and adhesives."

26. Virginia completed an EHS incident report; however, Plaintiff was never provided a copy of the report.

27. Plaintiff verbally reported the incident that same day to her Blue Origin team lead, Undre Howard ("Howard"), who acknowledged her by saying "copy that." Howard then assigned Plaintiff to return back to the same task involving adhesives.

28. During this time, Plaintiff was still at work and concerned that she might be terminated because of what was happening, she expressed that concern to Howard. He laughed and told her, "You'll be terminated for something else, but not this."

29. Plaintiff worked on the assignment for approximately twenty (20) minutes before the initial reaction, approximately fifteen (15) minutes after returning to the assignment following her evaluation by EHS. The extended exposure to the adhesives she had to use caused Plaintiff's initial rash to worsen significantly. The rash spread across her body, and her skin felt like fire.

30. Plaintiff had to stop working, and she waited approximately thirty (30) minutes before she was allowed to leave the facility. Before she was able to leave the facility, she also had to wait for approximately one (1) hour for Howard to come outside and retrieve a company tool that she had in her possession so that she would not leave Blue Origin property with company equipment. Plaintiff's friend, Gregory Wilson (Wilson"), met her at the Blue Origin facility and followed her to the hospital.

31. No ambulance was called for Plaintiff. She went to Huntsville Hospital where she was admitted for treatment. She was given immediate medical treatment, where she was treated with two types of antihistamine intravenous therapy, kept

overnight for observation, and released with two additional medications the following day.

32. Plaintiff received a text from supervisor Howard at approximately 9:44 a.m. the following morning, who asked how Plaintiff did the night before. Plaintiff explained she was taken to the ER and that she was fearful of losing her job. Undre did not respond to Plaintiff by text other than to say, “Get better mam.”

33. Plaintiff texted her supervisor, Warren the following afternoon on July 11, 2025, around 3:00 p.m., and asked if he remembered her telling him about her severe allergy to adhesives. Warren responded by text and told Plaintiff he remembered Plaintiff telling Andrew, Nate and him about her allergy on her first day at Blue Origin.

34. At or around 11:45 a.m., only two hours after notifying Howard (l.n.u.) about her life-threatening allergic reaction while on the job, Plaintiff was called on her personal cell phone at the hospital by a representative from ApTask who advised Plaintiff her contract with Blue Origin had been terminated.

35. When Plaintiff spoke with Howard following her termination, he told her, “Oh no, you weren’t supposed to be terminated like this.” When Plaintiff asked ApTask for the reason Blue Origin had provided for terminating her assignment, she was told that ApTask had not been given a reason for her termination.

36. Rather than allow Plaintiff the opportunity to recover from the allergic reaction and return to work when she was able, Blue Origin, instead, immediately terminated Plaintiff's contract with ApTask, less than eight weeks after she began her job at Blue Origin and less than 24-hours after she was injured on the job due to the Defendants' failure to accommodate her disability.

37. Plaintiff was never disciplined, written up, or counseled for any disciplinary or work performance issues while she worked at the Huntsville, Alabama Blue Origin facility.

38. ApTask neither protected Plaintiff nor helped to resolve the unfortunate situation caused by her employment at Blue Origin. Instead, ApTask did nothing while Blue Origin terminated her employment at Blue Origin in retaliation for requesting accommodation under the ADA and for needing time off work to recover from her allergic reaction caused by the Defendants' failure to accommodate her disability.

39. Plaintiff believes Blue Origin and ApTask subjected her to a dangerous environment, ignored her disability by having her work with items they were fully aware she was severely allergic to, failed to accommodate her disabilities, retaliated against her, and terminated her in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213, as amended ("ADA").

## CAUSES OF ACTION

### COUNT I
### Violation of the AMERICANS WITH DISABILITIES ACT of 1990, 42 U.S.C. §§ 12101-12213, as amended ("ADA")

40. Plaintiff realleges and incorporates by reference, paragraphs 1 through 39, as if fully stated herein.

41. Plaintiff suffers from a disability or is an individual that Defendant regarded as impaired under 42 USC § 12102.

42. Defendants ApTask and Blue Origin failed or refused to allow Plaintiff to work with a medical condition for which she had requested minimal accommodation.

43. Defendants ApTask and Blue Origin discriminated against Plaintiff in violation of the ADA by terminating her directly due to her disability.

44. Defendants ApTask and Blue Origin failed and/or refused to accommodate the Plaintiff's disability by ignoring her request for safety equipment, ignoring her request not to work with materials that caused her a severe, life-threatening reaction, and terminating her to avoid allowing her days off to recover from her severe allergic reaction that required treatment at a hospital.

45. The actions of Defendants ApTask and Blue Origin constituted discrimination against Plaintiff due to Plaintiff's disability and regarded Plaintiff as disabled.

46. Defendants ApTask and Blue Origin purposefully and intentionally discriminated against Plaintiff by terminating her due to her disability.

47. The actions and inactions of Defendants ApTask and Blue Origin constituted discharge of Plaintiff and/or discrimination against Plaintiff in an act or practice made unlawful by the ADA in violation of 42 U.S.C. § 12203(a).

48. The actions and inactions of Defendants ApTask and Blue Origin constituted interference, coercion, or intimidation of Plaintiff in the exercise or enjoyment of her rights protected by the ADA, in violation of 42 U.S.C. § 12203(b).

49. The actions and inactions of Defendants ApTask and Blue Origin violated 42 U.S.C. § 12203(a) and (b).

50. Plaintiff has, is, and will continue in the future to suffer pecuniary and non-pecuniary losses as a direct result of the Defendants ApTask and Blue Origin's violation of 42 U.S.C. § 12203(a) and (b), including emotional distress, pain, inconvenience, mental anguish, loss of enjoyment of life, and other losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Mary Kirkley, prays that that this Court:

(a) Enter a declaratory judgment that Defendants ApTask and Blue Origin's policies, practices and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by the Americans with Disabilities Act, as amended;

(b) Grant Plaintiff a permanent injunction enjoining Defendants ApTask and Blue Origin, its Agents Successors, Employees, Attorneys, and

those acting in concert with Defendants or at Defendants' request from violating the Americans with Disabilities Act, as amended;

(c) Grant Plaintiff an Order requiring Defendants ApTask and Blue Origin to make her whole by granting appropriate declaratory relief, compensatory damages (including damages for mental anguish), punitive damages, interest, expenses;

(d) Award Plaintiff back pay and front pay, in an amount to be determined by this Court;

(e) Award Plaintiff costs and attorneys' fees; and

(f) Grant such further, other and different relief, including equitable, as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all issues triable at law.

Respectfully submitted this the 31st day of August, 2026.

*<u>/s/ Eric J. Artrip</u>*
Teri R. Mastando (ASB-4507-E53T)
Eric J. Artrip (ASB-9673-I68E)
MASTANDO & ARTRIP, LLC
301 Holmes Ave. NE, Ste. 100
Huntsville, Alabama 35801
P: (256) 532-2222
F: (256) 513-7489
*teri@mastandoartrip.com*
*artrip@mastandoartrip.com*

**DEFENDANT WILL BE SERVED BY U.S. CERTIFIED MAIL:**

BLUE ORIGIN WASHINGTON, LLC
c/o CT Corporation System, Registered Agent
2 N. Jackson St., Ste. 605
Montgomery, AL 36104

FINTECH CONSULTING LLC, D/B/A APTASK GLOBAL WORKFORCE
120 Wood Ave. S., Ste. 300
Iselin, NJ 08830

*/s/ Eric J. Artrip*
Eric. J. Artrip